## LARSON v. KORTH.
### Civ. No. 1679.

United States District Court D. Utah.

June 28, 1950.

O. A. Tangren and H. A. Smith, both of Salt Lake City, Utah, for plaintiff.

Bryant H. Croft, Asst. U. S. Atty., of Salt Lake City, Utah, for defendant.

RITTER, District Judge.

On June 7, 1950, the above case came regularly on for trial to the Court without a jury, upon an agreed statement of facts and oral testimony, and the Court after hearing all the evidence and arguments of counsel, and being fully advised in the matter, makes the following

### Findings of Fact

1. This is a suit for refund of income taxes filed by A. D. Larson, as plaintiff, who is a resident of the State of Utah, against William J. Korth who is the Collector of Internal Revenue for the State of Utah.

2. A. D. Larson, plaintiff, timely filed his income tax return for the year 1945 in which he reported $4599.27 as taxable income received from the Lakeview Subdivision partnership, of which $2341.72 was one-half of $4683.45 reported by R. W. Larson, et al, in Lakeview Subdivision partnership return as A. D. Larson's share of profits received from the sale of capital assets. In his return for the year 1946 he reported $6671.55, which was one-half of his distributive share of gains received from the partnership in 1946, which the partnership reported as capital gains.

3. Upon audit of the taxpayer's and the partnership returns, the Commissioner of Internal Revenue determined that the profits reported as capital gains were received from the sales of the houses in the years 1945 and 1946 and was ordinary income. He increased the gross income of A. D. Larson by $2416.72 for the year 1945 and by $6963.74 for the year 1946. This increased the income taxes owing from A. D. Larson for the year 1945 by $593.90 and for 1946 by

$2260.42. On the July 2, 1948 list, the Commissioner assessed the additional income taxes of $593.90 and interest thereon of $81.83 for 1945 and taxes of $2260.42 and the interest of $175.85 for the year 1946. These sums were paid by the plaintiff to the defendant on September 29, 1948.

4. On September 30, 1948 the plaintiff filed claims for refund of 1945 income taxes for $673.41 and 1946 income taxes for $2469.43 paid to the defendant, on the ground that the income from the sales of the houses by the partnership were treated as ordinary income by the Commissioner, whereas, it should be given the benefit of Section 117(j) of the Internal Revenue Code, 26 U.S.C.A. § 117(j).

5. Ralph W. Larson was a builder engaged in the business of building and selling housing units and renting housing units, and was in that business for about twenty years.

6. In about March 1942 Ralph W. Larson purchased 19½ acres of land in Clearfield, Utah, known as Lakeview Acres, and later called Lakeview Subdivision, and thereafter filed for record two certificates of Protective Covenants respecting said land.

7. In about December 1942 Ralph W. Larson, A. D. Larson and Lester Hodges formed a partnership for the purpose of developing Lakeview Subdivision as a housing project. A. D. Larson and Lester Hodges did not invest any capital but did render services. The interests of the several partners were: Ralph W. Larson, 65%; A. D. Larson, 25%; and Lester Hodges, 10%.

8. Because of the shortage of and the great demand for construction materials during the year 1943, there had been created a Government Agency designated as War Production Board, which Board had an administrative office in Salt Lake City, Utah, and which Board was given control over the allotment and distribution of all materials for war housing, and in order to obtain any materials for war housing, it was first necessary to apply for and obtain from said War Production Board priorities for such materials.

9. To further supervise, regulate and control private war housing, the National Housing Agency was created, which was an administrative agency of the United States Government and was given power and authority to make regulations and to supervise, regulate and control the construction, renting, selling and other dealings with private war housing. On or about the 5th day of February, 1943 the National Housing Agency issued general orders and regulations which continued in effect, as modified, until the 15th day of October, 1945, when they were repealed. Pursuant to the regulations the restriction pertaining to the occupancy and disposition of private war housing was completely lifted from the Ogden, Utah area in which was located Lakeview Subdivision, on September 7, 1944.

10. In order to obtain from the War Production Board priorities for the necessary materials to be used in the construction of the private war housing project at Lakeview Subdivision, it was necessary that the partnership make application to the War Production Board in Salt Lake City, Utah, on Form PD–105. On March 29, 1943 and subsequently Ralph W. Larson, acting on behalf of said partnership, filed applications with said War Production Board for the construction of 99 single dwelling houses in the Lakeview Subdivision. Construction was commenced in about May 1943 and completed in about August 1944.

11. Under the regulations the partnership was required to rent the houses only to eligible war workers, but it had the right as provided in the general orders of the National Housing Agency to sell not more than one-third of the houses to be constructed.

12. Oscar Larson was employed by the partnership as general manager of the Lakeview Subdivision to handle the rentals and sales of the Lakeview properties and to supervise the repair and upkeep of the properties. It was the general practice of the partnership to enter into Lease Sale Option Agreements with the occupants whereby they paid two months' rent in advance and had an option to buy the property at the

stipulated price if the option was exercised within thirty months.

13. In the year 1944 the partnership sold eight houses and in its 1944 Partnership Return of Income it reported the profit as ordinary income. In the years 1945 and 1946 it sold 58 and 32 houses, respectively, and in the Partnership Return of Income filed for each of these years, it reported the profits as long term capital gains.

14. The partnership in the years 1944 and 1945 had a large sign displayed on the premises at the Lakeview Subdivision upon which were listed the rental prices of the dwellings and also the selling prices and it also advertised the dwellings for sale in the Salt Lake Tribune on three different occasions in 1945, as early as June 18, 1945. Some of the parties who actually purchased homes in this subdivision were first attracted to it by these advertisements.

15. Oscar Larson requested the occupants who were renting these dwellings to buy them and in the latter part of 1945 the tenants were notified orally and by letter that the properties were to be sold and the then selling prices were stated, which in every known instance were higher than those set out in the Lease Sale Option Agreements, which had been signed by them.

16. There was a continuity of sales from July 1944 to August 1, 1946 in which period of time 98 homes were sold by the partnership through its agents to tenants and to other people.

17. On at least one occasion it had an opportunity to sell the entire subdivision but refused to sell it as a whole.

### Conclusions of Law

1. The properties were held principally for sale in the ordinary course of trade or business within the meaning of Sections 117(b) and 117(j) (1) of the Internal Revenue Code, 26 U.S.C.A. § 117(b), (j)(1).

2. The land was bought before the restrictions were placed on private construction of housing and sales were made while the restrictions were still on. The restrictions were lifted about one month after building of the houses was completed and all the houses were sold within a short period of time, which shows an intent from the beginning to sell the houses except as the regulations temporarily prevented the sale.

3. These properties were at no time capital assets in the hands of the partnership and the limited restrictions of rent and sale did not make them capital assets.

4. The profits received from the sale of the properties were ordinary income as determined by the Commissioner of Internal Revenue, and the additional taxes for the years 1945 and 1946 were properly assessed to and collected from the plaintiff.

5. The plaintiff upon the pleadings, facts and evidence is not entitled to a refund and the defendant is entitled to judgment, costs to be taxed to the plaintiff.